

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

271 Cadman Plaza East
Brooklyn, New York 11201

EDP:CWE/AA
F. # 2024R00637

October 23, 2024

By ECF

The Honorable Kiyo A. Matsumoto
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

       Re:    United States v. Jerome Waters, et al.
                 Criminal Docket No. 24-413 (KAM)

Dear Judge Matsumoto:

       The government respectfully submits this letter in support of its application for the entry of a permanent order of detention for defendants Jerome Waters, also known as "the Engineer," Calvin Israel, and William Barnett (the "defendants").  As described below and in the six-count indictment, the defendants are members of a Baltimore-based violent robbery crew that conspired to commit an armed robbery and kidnapping of marijuana dealers in Queens, New York, which resulted in the death of John Doe #1.  For this reason and the reasons set forth below, the defendants cannot rebut the presumption that they are a danger to the community and a flight risk such that that no condition or combination of conditions can reasonably secure their appearance at trial or the safety of the community.  Accordingly, the defendants should be detained.[1]

I.     Procedural and Factual Background

       Over the night of July 24 into July 25, 2024, the defendants and their co-conspirators executed a violent armed robbery and kidnapping plot that resulted in John Doe #1's death.  Specifically, the defendants drove up from Maryland to New York for the purpose of kidnapping and robbing drug dealers at gunpoint, John Doe #1 and John Doe #2.  Once in New York, Waters and Barnett met with John Doe #1 and John Doe #2 at a stash house in Queens, New York, under the guise of purchasing marijuana.

---

      [1] Waters and Israel were arrested today in Baltimore.  Barnett remains at large.  The government submits this letter in the event the defendants' detention is raised in this court.

Moments later, Waters and Barnett pulled out guns and held up John Doe #1 and John Doe #2. Next, they invited their co-conspirators into the stash house to assist in the robbery and kidnapping. While in the stash house, the defendants and their co-conspirators tied up John Doe #1 and John Doe #2 with zip ties and then forced them outside and into the back of a Jeep and a U-Haul van at gunpoint. At the same time, the defendants and their co-conspirators stole approximately 30 pounds of marijuana from the stash house.

The defendants and their co-conspirators drove John Doe #1 and John Doe #2, who were still tied up, through Queens at gunpoint, demanding drugs and money. Israel drove the U-Haul van containing John Doe #1, who was then shot multiple times in the head in the back of the U-Haul van. When his body was found by first responders, John Doe #1 still had a zip tie binding one of his hands and was surrounded by bags of marijuana. After the shooting, the defendants all fled back to Maryland.

On October 9, 2024, Waters, Barnett, and Israel were indicted by a federal grand jury sitting in the Eastern District of New York for various federal crimes, including: (a) Hobbs Act robbery and conspiracy to commit the same, in violation of 18 U.S.C. § 1951(a); (b) possessing, brandishing and discharging one or more firearms in violation of 18 U.S.C. § 924(c); (c) causing death through use of a firearm, in violation of 18 U.S.C. § 924(j)(1); and (d) kidnapping resulting in a death, in violation of 18 U.S.C. 1201(a)(1). See ECF No. 1.

II.     Legal Standard

Under the Bail Reform Act, 18 U.S.C. § 3141 et seq., federal courts are empowered to order a defendant's detention pending trial upon a determination that the defendant is either a danger to the community or a risk of flight. 18 U.S.C. § 3142(e).

Where a defendant is "indicted for an offense under 18 U.S.C. § 924(c)," "it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e)(3); United States v. Bryant, 827 F. App'x 122, 124 (2d Cir. 2020). In a presumption case such as this, a defendant bears a limited burden of production "to rebut that presumption by coming forward with evidence that he does not pose a danger to the community or a risk of flight." United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001). "Once a defendant has met his burden of production relating to these two factors, the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the district court." Id.

The concept of "dangerousness" encompasses not only the effect of a defendant's release on the safety of identifiable individuals, such as victims and witnesses, but also "'the danger that the defendant might engage in criminal activity to the detriment of the community.'" United States v. Millan, 4 F.3d 1038, 1048 (2d Cir. 1993) (quoting legislative history).

Additionally, the possibility of a severe sentence is an important factor in assessing a defendant's likelihood of flight. See United States v. Jackson, 823 F.2d 4,7 (2d Cir. 1987); United States v. Martir, 782 F.2d 1141, 1147 (2d Cir. 1986) (defendants charged with serious offenses whose maximum combined terms created potent incentives to flee); United

States v. Cisneros, 328 F.3d 610, 618 (10th Cir. 2003) (defendant was a flight risk because her knowledge of the seriousness of the charges against her gave her a strong incentive to abscond); United States v. Townsend, 897 F.2d 989, 995 (9th Cir. 1990) ("Facing the much graver penalties possible under the present indictment, the defendants have an even greater incentive to consider flight."); United States v. Dodge, 846 F. Supp. 181, 184-85 (D. Conn. 1994) (possibility of a "severe sentence" heightens the risk of flight).

Obstruction of justice is another ground for pretrial detention. The Bail Reform Act permits detention of a defendant where there is "a serious risk that such person will obstruct or attempt to obstruct justice[.]" 18 U.S.C. § 3142(f)(2)(B). In United States v. LaFontaine, 210 F.3d 125, 134 (2d Cir. 2000), the Second Circuit held that witness tampering was a form of nonviolent obstruction of justice that allows a defendant's detention.

Whether detention is sought on the basis of flight or dangerousness, the Bail Reform Act lists four factors to be considered in the detention analysis: (1) the nature and circumstances of the crimes charged, including whether the offense involved a controlled substance or a firearm; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the seriousness of the danger posed by the defendant's release. See 18 U.S.C. § 3142(g).

Evidentiary rules do not apply at detention hearings and the government is entitled to present evidence by way of proffer, among other means. See 18 U.S.C. § 3142(f)(2); see also LaFontaine, 210 F.3d at 130-31. In the pre-trial context, few detention hearings involve live testimony or cross-examination. Most proceed on proffer. LaFontaine, 210 F.3d at 131. This is because bail hearings are "typically informal affairs, not substitutes for trial or discovery." Id. (internal quotation marks omitted).

III.     Argument

The defendants here cannot rebut the presumption that they pose a danger to the community and a risk of flight.

A.     The Defendants Pose a Serious Danger to the Community

The defendants are presently charged with, among other federal crimes: (a) the unlawful use of a firearm, in violation of 18 U.S.C. § 924(c), which carries a mandatory minimum of 10 years' imprisonment and maximum term of life imprisonment; (b) causing a death through the use of a firearm, in violation of 18 U.S.C. § 924(j)(1), which carries a maximum term of life imprisonment; and (c) kidnapping resulting in a death, in violation of 18 U.S.C. § 1201(a)(1), which carries a mandatory term of life imprisonment or death. Accordingly, a rebuttable presumption of detention applies. 18 U.S.C. § 3142(e)(3)(A). The defendants cannot overcome the presumption that they pose a serious danger to the community. See 18 U.S.C. § 3142(g).

First, the charged offenses are manifestly serious and dangerous. The defendants conspired to commit and did commit an armed robbery and kidnapping that left a man dead. Barnett and Waters themselves held the victims at gunpoint. The violence of this incident

3

demonstrates that the defendants would be a danger to the community if released.  See, e.g., United States v. English, 629 F.3d 311, 322 (2d Cir. 2011) (affirming a district court's findings that defendants were a danger to the community and had to be detained when the defendants were accused of carrying a firearm in connection with a drug crime).  Thus, the crimes charged here, "conspiracy to commit armed robbery of a drug-dealer weigh[] heavily against release." Mercedes, 254 F.3d at 437; United States v. Rodriguez, No. 12-CR-83S, at *2 (W.D.N.Y. Apr. 2, 2013) (denying motion for bail in case involving charges of "alleged kidnapping and armed robbery").

The defendants here played integral roles in the offense.  Waters and Barnett helped arrange the meeting with John Doe #1.  Additionally, Israel rented and drove the U-Haul van used to kidnap John Doe #1, and where John Doe #1 was ultimately killed. Moreover, this was not a spur of the moment crime, but one carefully choreographed.  The defendants and their co-conspirators traveled for approximately four hours via a caravan of vehicles and participants from Maryland to New York.  That they persisted in their plan despite having many hours to reconsider reflects their dangerousness and warrants the defendants' detention.

B. The Defendants Pose a Flight Risk

The defendants should also be detained pending trial because they cannot rebut the presumption that they are flight risks.

First, as discussed above, each defendant faces significant time of incarceration. The crimes that the defendants are charged with carry a statutory minimum sentence of life imprisonment.  See 18 U.S.C. § 1201(a).  The likelihood of a lengthy term of imprisonment gives the defendants a strong incentive to flee.  See United States v. Blanco, 570 F. App'x 76, 77 (2d Cir. 2014) (affirming district court's order of detention where defendants face lengthy term of imprisonment).  It also minimizes any risk that pre-trial detention would result in an over-served sentence.

Second, the weight of the evidence also heightens the incentive to flee.  Among other things, the defendants were captured by surveillance footage, vehicle license plate readers, latent prints, and location data evidence placing them at pivotal moments of the robbery scheme, including travelling to and in Queens, New York during the robbery and shooting.  Waters and Israel were also identified as the individuals who robbed John Doe #1 and John Doe #2 by a confidential witness who is familiar with them.



***Left to right: Israel renting the U-Haul van used in the crime; Waters and Barnett while at a gas station on the way to New York on the evening of July 24, 2024***

Where, as here, the evidence of guilt is strong, it provides "a considerable incentive to flee." United States v. Millan, 4 F.3d 1038, 1046 (2d Cir. 1993); see also United States v. Palmer-Contreras, 835 F.2d 15, 18 (1st Cir. 1987) (where "the evidence against defendants is strong, the incentive for relocation is increased").

Third, the defendants have no ties to the community. None of the defendants live anywhere in or near the district. Rather, they targeted the Eastern District of New York as a place to rob, kidnap and murder a member of our community.

IV. Conclusion

For the foregoing reasons, the government respectfully requests that the Court issue a permanent order of detention for the defendants.

    Respectfully submitted,

    BREON PEACE
    United States Attorney

By:   /s/
    Chand Edwards-Balfour
    Adam Amir
    Assistant U.S. Attorneys
    (718) 254-7000

cc: Clerk of Court (KAM) (by ECF)