**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

ADW:CWE/AA
F. #2024R00637

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

December 10, 2025

By ECF

The Honorable Kiyo A. Matsumoto
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: United States v. Delonta Pittman
Criminal Docket No. 24-413 (KAM)

Dear Judge Matsumoto:

The government respectfully submits this letter in advance of the defendant Delonta Pittman's sentencing hearing, which is scheduled for December 11, 2025. The defendant has pleaded guilty to Hobbs Act robbery, in violation of Title 18, United States Code, Section 1951(a), and brandishing a firearm, in violation of Title 18, United States Code, Section 924(c)(1)(A)(ii), in connection with an armed robbery and homicide in Queens, New York.

For the reasons stated below, the undersigned does not object to the defendant's request for an aggregate sentence of 168 months' imprisonment. Such a sentence is sufficient, but not greater than necessary, to achieve the goals of sentencing set forth at 18 U.S.C. § 3553(a).

## I. Factual & Procedural Background

### A. Offense Conduct

Delonta Pittman was a member of an armed robbery crew (the "Maryland Crew") that targeted marijuana dealers from Maryland and New York City. See Presentence Investigation Report dated November 6, 2025 ("PSR") ¶ 7.[1] The crew also included co-defendants William Barnett, Jerome Waters, Calvin Israel, Marcus Pittman, and Jalon Garrett, among others. Id. Prior to the instant offense, Delonta Pittman participated in at least two other robberies of marijuana dealers with at least one of his co-defendants. Id. at 8.

[1] In addition to the instant robbery described below, the crew perpetrated at least two other armed robberies in which Delonta Pittman is believed to have participated.

On July 24, 2024, the Maryland Crew traveled from Maryland to New York, where the group later robbed and kidnapped Julian Mejias ("Victim-1") and Victim-2 (collectively, "the Victims"). PSR ¶ 8. The kidnapping culminated in the Maryland Crew shooting and killing Victim-1 on July 25, 2024 (the "July 25, 2024 Murder"). Id.

On or about July 24, 2024, the Victims met with Barnett and Waters at a stash house in a residential area of 197th Street in Queens, New York. PSR ¶ 8. The Victims intended to sell the members of the Maryland Crew a large quantity of marijuana. Id. Shortly thereafter, Barnett and Waters pulled out firearms and aimed them at the Victims. Id. ¶ 11. Next, Barnett and Waters signaled the other members of the Maryland Crew, including Delonta Pittman, who had been waiting outside, to assist in the robbery. Id. Then Delonta Pittman, Barnett and the other members of the Maryland Crew inside the residence grabbed the Victims and zip-tied their hands behind their backs. Id. Delonta Pittman provided the zip-ties. Id. After forcibly taking approximately 30 pounds of marijuana from the Victims, the members of the Maryland Crew moved the Victims outside. Id. The Victims were forced into two vehicles at gunpoint. Id. Victim-1 was placed in the back of a U-Haul Van and held at gunpoint. Id. Victim-2 was placed in the back of Victim-1's Jeep. Id.

The Maryland Crew then drove the Victims around for approximately 30 minutes, demanding money and marijuana and threatening to shoot the Victims, until the vehicles all stopped in another residential area on 208 Street in Queens (the "208 Street Location"). PSR ¶¶ 12–13. While at the 208 Street Location, Victim-1 and one of the members of the Maryland Crew physically fought in the back of the U-Haul Van. Id. Marcus Pittman subsequently shot Victim-1 multiple times, killing him. Id. ¶ 14. At the time of the shooting, Delonta Pittman was in a separate vehicle down the street. Id.

B. Procedural History

On April 16, 2025, a grand jury sitting in the Eastern District of New York, returned a superseding indictment charging Delonta Pittman with committing a Hobbs Act Robbery and conspiracy to do the same, in violation of 18 U.S.C. § 1951(a), possessing brandishing and discharging a firearm in connection with a crime of violence, in violation of 18 U.S.C. § 924(c), causing a death through the use of a firearm, in violation of 18 U.S.C. § 924(j)(1), and kidnapping and kidnapping resulting in a death, in violation of 18 U.S.C. § 1201(a)(1).

On September 5, 2025, Delonta Pittman pleaded guilty before the Court to committing a Hobbs Act robbery and brandishing a firearm in connection with a crime of violence pursuant to a plea agreement (the "Plea Agreement"). ECF No. 142.

II. Applicable Law

The Supreme Court has explained that "a district court should begin all sentencing proceedings by correctly calculating the applicable the United States Sentencing Guidelines (the "Guidelines") range. Gall v. United States, 552 U.S. 38, 49 (2007). Though advisory, see United States v. Booker, 543 U.S. 220, 264 (2005), the Guidelines nonetheless are "the starting point and the initial benchmark," Gall, 552 U.S. at 49; see also Molina-Martinez v. United

States, 578 U.S. 189, 198–99 (2016) (explaining that "[t]he Guidelines are the framework for sentencing and anchor the district court's discretion" (alternation and internal quotation marks omitted)).

After calculating the applicable Guidelines range, the court must consider the factors outlined in § 3553(a), see Gall, 552 U.S. at 49, and "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing," United States v. Cavera, 550 F.3d 180, 188 (2d Cir. 2008) (citing 18 U.S.C. § 3553(a)(2)). Section 3553(a) directs the court "in determining the particular sentence to impose" to evaluate: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the statutory purposes noted above; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range as set forth in the Sentencing Guidelines; (5) the Sentencing Guidelines policy statements; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to any victims of the offense. "[I]n the ordinary case, the [U.S. Sentencing] Commission's recommendation of a sentencing range will reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." Kimbrough v. United States, 552 U.S. 85, 109 (2007) (internal quotation marks omitted); see also United States v. Rueda-Zarate, 291 F. App'x 364, 366 (2d Cir. 2008) ("A Guidelines sentence will in the ordinary case 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives.'" (quoting Kimbrough, 552 U.S. at 109)); United States v. Fernandez, 443 F.3d 19, 27 (2d Cir. 2006) ("[I]n the overwhelming majority of cases, a Guidelines sentence will fall comfortably within the broad range of sentences that would be reasonable in the particular circumstances."). That is because "the sentencing statutes envision both the sentencing judge and the Commission as carrying out the same basic § 3553(a) objectives, the one, at retail, the other at wholesale." Rita v. United States, 551 U.S. 338, 348 (2007).

At sentencing, "the court is virtually unfettered with respect to the information it may consider." United States v. Alexander, 860 F.2d 508, 513 (2d Cir. 1988). Indeed, "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661.

## IV. Discussion

### A. The Guidelines Calculation

As an initial matter, the government submits that the Total Offense Level for Count Two—as reflected in both the PSR and the Plea Agreement—is 40, see PSR ¶ 59; Plea Agmt. ¶ 2. The government agrees with the U.S. Probation Department that because Delonta Pittman falls in Criminal History Category II, see PSR ¶ 64, the resulting Guidelines range is 324 to 405 months' imprisonment, but since the maximum term of imprisonment on Count Two is 240 months, his effective guidelines range on that count is 240 months, see id. ¶ 99. The defendant is also subject to a consecutive term of at least 84 months' imprisonment on Count Three. Id. However, the government erred in the Plea Agreement and stated that the defendant had a Guidelines range of 292 to 365 months' imprisonment for Count Two based upon a Criminal History Category of I; though the government noted the statutory maximum capped the

Guidelines at 240 months' imprisonment. Thus, the appropriate Guideline for the defendant is 240 months' imprisonment on Count Two and a consecutive 84 months' imprisonment on Count Three.

B. The § 3553(a) Factors Demand a Significant Term of Imprisonment

The government respectfully submits that while consideration of the factors set forth in § 3553(a) supports a sentence of 292 to 365 months' imprisonment as agreed upon in the parties' Plea Agreement, the undersigned would not object to the Court's imposition of an aggregate sentence of 168 months' imprisonment.

1. Nature and Circumstances of the Offense

The seriousness of the offenses cannot be overstated and requires a substantial carceral sentence. See 18 U.S.C. § 3553(a)(1).

As the Supreme Court has noted, "robbery is a serious crime deserving serious punishment." Enmund v. Florida, 458 U.S. 782, 797 (1982). This is especially true where, as here, a defendant's conduct not only recklessly endangered the lives of others, see, e.g., United States v. Pena, No. 14-CR-553 (WFK), 2016 WL 3582045, at *3 (E.D.N.Y. June 28, 2016), but in fact contributed to a loss of life.

Delonta Pittman committing multiple vicious armed robberies, with the most recent one ending in a kidnapping and death. Notably, Delonta Pittman brought the zip-ties and tied up the Victims as part of the July 25, 2024 Murder, after initially waiting outside. He thus not only served as manpower for the crew but also took active steps to further the robbery.

Delonta Pittman's repeated willingness to partner with his co-conspirators to commit violent robberies for personal gain demonstrates the appropriateness of the requested sentence. That he did not personally commit the July 25, 2024 Murder does not warrant a downward departure or variance because that fact is already reflected in the offenses of conviction and applicable statutory penalties.

2. History and Characteristics of the Defendant

The government does not object to the defendant's requested aggregate sentence of 168 months' imprisonment, based on his history and characteristics. See 18 U.S.C. § 3553(a)(1).

Based on defense counsel's submission, the defendant clearly had a troubled childhood, which has impacted him profoundly. In the defendant's sentencing submission, defense counsel said that Delonta Pittman "did everything for his daughter" prior to his arrest in this case. Defense Submission at p.5. To the extent Delonta Pittman requests leniency by virtue of his need to parent his child, his particular circumstances show that any such argument should mostly be rejected. Cf. United States v. Faria, 161 F.3d 761, 762 (2d Cir. 1998) (emphasizing that "a district court may depart on the basis of family circumstances only in exceptional circumstances" (emphasis added)). While it is admirable that he has been such a consistent and

supportive force in his daughter's life prior to his arrest in this case, it bears emphasis that he was a parent at the time of July 25, 2024 Murder. Clearly, his familial obligations did nothing to induce him to maintain a law-abiding life then, and there is nothing to suggest it will do so now. Furthermore, the unfortunate consequences of his criminal conduct on his child were entirely foreseeable to Delonta Pittman; it was Delonta Pittman alone who made the choices to violate the law in a way that has placed him at risk of a significant term of imprisonment. See United States v. Al Kassar, No. 07-CR-354 (JSR), 2020 WL 4813199, at *2 (S.D.N.Y. Aug. 19, 2020) ("[W]hile the [c]ourt is cognizant of the burden imposed by defendant's inability to see his loving family, anyone who commits as serious a crime as this defendant must know in his heart that if he is caught and imprisoned, it is his own family who may suffer the worst."); cf. United States v. Sorenson, 233 F. Supp. 3d 690, 703 (S.D. Iowa) (underscoring that the "[d]efendant cannot escape an otherwise just sentence by propping up his family to invoke undue sympathy"), aff'd, 705 F. App'x 481 (8th Cir. 2017).

Nonetheless, the government recognizes that the defendant has been a consistent source of support for numerous family members as seen in their letters of support. And despite his troubled upbringing, the defendant has done well to try to change the narrative on his life with consistent employment and being a present parent. In fashioning the appropriate sentence, the Court should credit the defendant's tough upbringing, his support for family—including the cousin who suffered from an aggressive form of cancer and his daughter, and that he had consistent employment and ability to provide for his family.

3. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, Promote Respect for the Law, and Provide Just Punishment for the Offense

Particularly acute here is the need for the sentence to reflect the seriousness of the offenses, to promote respect for the law, and to provide just punishment for the offense. See 18 U.S.C. § 3553(a)(2)(A). Delonta Pittman's actions, together with his co-conspirators, wreaked havoc on residential neighborhoods in Baltimore and Queens, then left a wife without a husband and children without a father. The defendant's conduct and crime of conviction demonstrate his willing disregard for the law and willingness to engage in reckless violent behavior. The defendant made a deliberate choice to participate in the violent kidnapping and robbery of Victim-1 for marijuana. The defendant's repeated choices to engage in violence deserve severe punishment. Under these circumstances, the requested sentence is sufficient, but not greater than necessary, to achieve the goals of sentencing.

4. The Need for the Sentence Imposed to Afford Adequate Deterrence to Criminal Conduct

A significant term of imprisonment also would accomplish the goals of sentencing by underscoring the significant ramifications that come when criminal actors commit violent robberies using firearms, which here escalated to murder. See 18 U.S.C. § 3553(a)(2)(B). It is undeniable that gun violence runs rampant in New York, particularly in the City's most impoverished neighborhoods. A meaningful term of imprisonment will serve to deter others who, like Delonta Pittman, contemplate using violence for personal gain.

Further, the Court should send an appropriately strong message to the defendant, as well as to others similarly situated, that providing any form of assistance during violent robberies will be met with meaningful consequences. Additionally, given his history of repeated violent conduct, a serious sentence is necessary to dissuade him from future criminal acts and to protect the community from other violence he might commit.

V. Conclusion

For the reasons set forth above, the government does not object to the defendant's request for an aggregate sentence of 168 months' imprisonment.

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney

By: /s/ Chand Edwards-Balfour
Chand Edwards-Balfour
Adam Amir
Assistant U.S. Attorneys
(718) 254-7000

cc: Clerk of the Court (KAM) (by ECF)
Samuel Gregory, Esq. (by ECF and email)
U.S. Probation Officer Frank Nikolaidis (by email)