**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

ADW:CWE/AA
F. #2024R00637

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

January 14, 2026

By ECF

The Honorable Kiyo A. Matsumoto
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: United States v. Jerome Waters
Criminal Docket No. 24-413 (KAM)

Dear Judge Matsumoto:

The government respectfully submits this letter in advance of the defendant Jerome Waters's sentencing hearing, which is scheduled for January 21, 2026. The defendant has pleaded guilty to Hobbs Act robbery, in violation of Title 18, United States Code, Section 1951(a), and discharging a firearm, in violation of Title 18, United States Code, Section 924(c)(1)(A)(iii), in connection with an armed robbery and homicide in Queens, New York.

For the reasons stated below, the undersigned requests that the Court sentence the defendant to 240 months' imprisonment, followed by a mandatory consecutive term of 120 months' imprisonment. Such a sentence is sufficient, but not greater than necessary, to achieve the goals of sentencing set forth at 18 U.S.C. § 3553(a).

## I. Factual & Procedural Background

### A. Offense Conduct

Jerome Waters was a member of an armed robbery crew (the "Maryland Crew") that targeted marijuana dealers from Maryland and New York City. See Presentence Investigation Report dated November 6, 2025 ("PSR") ¶ 7. The crew also included co-defendants William Barnett, Delonta Pittman, Calvin Israel, Marcus Pittman, and Jalon Garrett, among others. Id.

On July 24, 2024, Waters, along with the Maryland Crew, traveled from Maryland to New York and robbed and kidnapped Julian Mejias ("Victim-1") and Victim-2 (collectively, "the Victims"). Id. The kidnapping culminated in the shooting and killing Victim-1 on July 25, 2024 (the "July 25, 2024 Murder"). Id.

On or about July 24, 2024, the Victims met with Barnett and Waters at a stash house in a residential area of 197th Street in Queens, New York. PSR ¶ 10. The Victims intended to sell Barnett and Waters a large quantity of marijuana. Id. Shortly into the meeting, Barnett and Waters pulled out firearms and aimed them at the Victims. Id. ¶ 11. Next, Barnett and Waters signaled the other members of the Maryland Crew, including Delonta Pittman, who had been waiting outside, to assist in the robbery. Id. Then Delonta Pittman, Barnett and the other members of the Maryland Crew grabbed the Victims and zip-tied their hands behind their backs. Id. Delonta Pittman provided the zip-ties. Id. After forcibly taking approximately 30 pounds of marijuana from the Victims, the members of the Maryland Crew moved the Victims outside. Id. The Victims were forced into two vehicles at gunpoint. Id. Victim-1 was placed in the back of a U-Haul Van and held at gunpoint. Id. Victim-2 was placed in the back of Victim-1's Jeep. Id.

The Maryland Crew then drove the Victims around for approximately 30 minutes, demanding money and marijuana and threatening to shoot the Victims, until the vehicles all stopped in another residential area on 208 Street in Queens (the "208 Street Location"). PSR ¶¶ 12–13. While at the 208 Street Location, Victim-1 and Marcus Pittman physically fought in the back of the U-Haul Van. Id. Around that same time, Waters left his vehicle and went to the back of the U-Haul, opened the door and observed the struggle, closed the door and ran away. Id. ¶ 14. Marcus Pittman subsequently shot Victim-1 multiple times, killing him. Id.

B. Procedural History

On April 16, 2025, a grand jury sitting in the Eastern District of New York, returned a superseding indictment charging Jerome Waters with committing a Hobbs Act Robbery and conspiracy to do the same, in violation of 18 U.S.C. § 1951(a), possessing, brandishing and discharging a firearm in connection with a crime of violence, in violation of 18 U.S.C. § 924(c), causing a death through the use of a firearm, in violation of 18 U.S.C. § 924(j)(1), and kidnapping and kidnapping resulting in a death, in violation of 18 U.S.C. § 1201(a)(1).

On October 17, 2025, Jerome Waters pleaded guilty before the Court to committing a Hobbs Act robbery and discharging a firearm in connection with a crime of violence pursuant to a plea agreement (the "Plea Agreement"). ECF No. 151.

II. Applicable Law

The Supreme Court has explained that "a district court should begin all sentencing proceedings by correctly calculating the applicable the United States Sentencing Guidelines (the "Guidelines") range. Gall v. United States, 552 U.S. 38, 49 (2007). Though advisory, see United States v. Booker, 543 U.S. 220, 264 (2005), the Guidelines nonetheless are "the starting point and the initial benchmark," Gall, 552 U.S. at 49; see also Molina-Martinez v. United States, 578 U.S. 189, 198–99 (2016) (explaining that "[t]he Guidelines are the framework for sentencing and anchor the district court's discretion" (alternation and internal quotation marks omitted)).

After calculating the applicable Guidelines range, the court must consider the factors outlined in § 3553(a), see Gall, 552 U.S. at 49, and "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing," United States v. Cavera, 550 F.3d 180, 188 (2d Cir. 2008) (citing 18 U.S.C. § 3553(a)(2)). Section 3553(a) directs the court "in determining the particular sentence to impose" to evaluate: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the statutory purposes noted above; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range as set forth in the Sentencing Guidelines; (5) the Sentencing Guidelines policy statements; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to any victims of the offense. "[I]n the ordinary case, the [U.S. Sentencing] Commission's recommendation of a sentencing range will reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." Kimbrough v. United States, 552 U.S. 85, 109 (2007) (internal quotation marks omitted); see also United States v. Rueda-Zarate, 291 F. App'x 364, 366 (2d Cir. 2008) ("A Guidelines sentence will in the ordinary case 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives.'" (quoting Kimbrough, 552 U.S. at 109)); United States v. Fernandez, 443 F.3d 19, 27 (2d Cir. 2006) ("[I]n the overwhelming majority of cases, a Guidelines sentence will fall comfortably within the broad range of sentences that would be reasonable in the particular circumstances."). That is because "the sentencing statutes envision both the sentencing judge and the Commission as carrying out the same basic § 3553(a) objectives, the one, at retail, the other at wholesale." Rita v. United States, 551 U.S. 338, 348 (2007).

At sentencing, "the court is virtually unfettered with respect to the information it may consider." United States v. Alexander, 860 F.2d 508, 513 (2d Cir. 1988). Indeed, "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661.

## IV. Discussion

### A. The Guidelines Calculation

As an initial matter, the government submits that the Total Offense Level for Count Two—as reflected in both the PSR and the Plea Agreement—is 40, see PSR ¶ 68; Plea Agmt. ¶ 2. The government agrees with the U.S. Probation Department that because Jerome Waters falls in Criminal History Category I, see PSR ¶ 72, the resulting Guidelines range is 292 to 365 months' imprisonment. But since the maximum term of imprisonment on Count Two is 240 months, his effective Guidelines range on that count is 240 months, see id. ¶ 105. The defendant is also subject to a consecutive term of at least 120 months' imprisonment on Count Three. Id. Thus, the appropriate Guidelines range for the defendant is 240 months' imprisonment on Count Two and a consecutive 120 months' imprisonment on Count Three.[1]

[1] The government's Plea Agreement overestimated the Guidelines range as 324 to 405 months' imprisonment for Count Two based upon a Criminal History Category of II; though the

B. The § 3553(a) Factors Demand a Significant Term of Imprisonment

The government respectfully submits that a consideration of the factors set forth in § 3553(a) supports a sentence of 240 months' imprisonment, followed by a mandatory consecutive term of 120 months' imprisonment.

1. Nature and Circumstances of the Offense

The seriousness of the offenses cannot be overstated and requires a substantial carceral sentence. See 18 U.S.C. § 3553(a)(1).

As the Supreme Court has noted, "robbery is a serious crime deserving serious punishment." Enmund v. Florida, 458 U.S. 782, 797 (1982). This is especially true where, as here, a defendant's conduct not only recklessly endangered the lives of others, see, e.g., United States v. Pena, No. 14-CR-553 (WFK), 2016 WL 3582045, at *3 (E.D.N.Y. June 28, 2016), but in fact contributed to a loss of life.

The defendant was a critical member of the robbery scheme. He set up the armed robbery that resulted in a kidnapping and death. Waters purchased marijuana from the Victims before the robbery, communicated with the Victims, and feigned that he was interested in making another large marijuana purchase in July 2024. The defendant also helped recruit others, including Calvin Israel, to join on the trip. At the robbery, the defendant pulled out a gun in the stash house and held it to the Victims. The defendant's role in organizing the scheme, recruiting participants, lulling the Victims into a false sense of comfort, and brandishing a firearm are significant aggravating factors that merit a Guidelines sentence.

2. History and Characteristics of the Defendant

The government requests a sentence of 240 months' imprisonment, followed by a mandatory consecutive term of 120 months' imprisonment, based on his history and characteristics. See 18 U.S.C. § 3553(a)(1).

Based on defense counsel's submission, the defendant clearly had a troubled childhood, including abuse from his stepfather and family members' drug and alcohol abuse, which has impacted him profoundly. In the defendant's sentencing submission, defense counsel said regarding Jerome Waters, "[j]ust when he thought he "had finally made it [in the music industry]" [See PSR ¶ 83], his mother took ill forcing Jerome to return to Baltimore to care for her." Defense Submission at p.5. The defendant seems to have had a promising start to a potential career in the music industry in California before his mother became ill. While it is noble that he returned home from California to take care of his mother, his return to take care of his mother is no excuse for him to turn to a life of crime. Becoming a caregiver for an ailing parent does not logically lead someone to a life of crime. Nor does suffering violent punishment

government noted the statutory maximum capped the Guidelines at 240 months' imprisonment. The government agrees with Probation's estimate.

from a stepparent. The Court should fashion a sentence that takes into account the defendant's history and actions he took to assist his mother, while at the same time recognizing that they cannot excuse the violent nature of the instant crime.

3. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, Promote Respect for the Law, and Provide Just Punishment for the Offense

Particularly acute here is the need for the sentence to reflect the seriousness of the offenses, to promote respect for the law, and to provide just punishment for the offense. See 18 U.S.C. § 3553(a)(2)(A). Waters's actions, together with his co-conspirators, left a wife without a husband and children without a father. The defendant's conduct and crime of conviction demonstrate his willing disregard for the law and willingness to engage in reckless violent behavior. The defendant made a deliberate choice to participate in the violent armed kidnapping and robbery of Victim-1 for marijuana. The defendant's actions to lure the Victims into a false sense of security are particularly concerning here. Under these circumstances, a Guidelines sentence is sufficient, but not greater than necessary, to achieve the goals of sentencing.

4. The Need for the Sentence Imposed to Afford Adequate Deterrence to Criminal Conduct

A Guidelines term of imprisonment also would accomplish the goals of sentencing by underscoring the significant ramifications that come when criminal actors commit violent robberies using firearms, which here escalated to murder. See 18 U.S.C. § 3553(a)(2)(B). A meaningful term of imprisonment will serve to deter others who, like Waters, contemplate using guns and violence for personal gain. Further, the Court should send an appropriately strong message to the defendant, as well as to others similarly situated, that providing setting up any violent robberies will be met with meaningful consequences.

V. Conclusion

For the reasons set forth above, the government requests a sentence of 240 months' imprisonment followed by a mandatory consecutive term of 120 months' imprisonment.

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney

By: /s/ Chand Edwards-Balfour
Chand Edwards-Balfour
Adam Amir
Assistant U.S. Attorneys
(718) 254-7000

cc: Clerk of the Court (KAM) (by ECF)
Elizabeth Macedonio, Esq. (by ECF and email)
Mark DeMarco, Esq. (by ECF and email)
U.S. Probation Officer Frank Nikolaidis (by email)