**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

RMP:CWE/AA
F. #2024R00637

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

June 19, 2026

By ECF

The Honorable Kiyo A. Matsumoto
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: United States v. Calvin Israel
Criminal Docket No. 24-413 (KAM)

Dear Judge Matsumoto:

The government respectfully submits this letter in advance of the defendant Calvin Israel's sentencing hearing, which is scheduled for June 26, 2026. Israel pleaded guilty to committing a Hobbs Act robbery, in violation of Title 18, United States Code, Section 1951(a), and possessing a firearm, in violation of Title 18, United States Code, Section 924(c)(1)(A)(i), in connection with an armed robbery and homicide in Queens, New York.

The government respectfully submits that a downward variance from a sentence within the applicable United States Sentencing Guidelines ("Guidelines" or "USSG") range of 235 to 240 months' imprisonment, followed by a mandatory consecutive term of 60 months' imprisonment may be appropriate in this case.

## I. Factual & Procedural Background

### A. Offense Conduct

Calvin Israel was a member of an armed robbery crew (the "Maryland Crew") that targeted marijuana dealers from Maryland and New York City. See Presentence Investigation Report dated April 15, 2026 ("PSR") ¶ 7. The crew also included co-defendants Jerome Waters, Delonta Pittman, William Barnett, Marcus Pittman, and Jalon Garrett, among others. Id.

On July 24, 2024, Israel, along with the Maryland Crew, traveled from Maryland to New York and robbed and kidnapped Julian Mejias ("Victim-1") and Victim-2 (collectively, "the Victims"). Id. The kidnapping culminated in the shooting and killing Victim-1 on July 25, 2024 (the "July 25, 2024 Murder"). Id.

On or about July 24, 2024, the Victims met with Barnett and Waters at a stash house in a residential area of 197th Street in Queens, New York. PSR ¶ 10. The Victims intended to sell Barnett and Waters a large quantity of marijuana. Id. Shortly into the meeting, Barnett and Waters pulled out firearms and aimed them at the Victims. Id. ¶ 11. Next, Barnett and Waters signaled the other members of the Maryland Crew, including Delonta Pittman, who had been waiting outside, to assist in the robbery. Id. Then Delonta Pittman, Barnett and the other members of the Maryland Crew grabbed the Victims and zip-tied their hands behind their backs. Id. Delonta Pittman provided the zip-ties. Id. After forcibly taking approximately 30 pounds of marijuana from the Victims, the members of the Maryland Crew moved the Victims outside. Id. The Victims were forced into two vehicles at gunpoint. Id. Victim-1 was placed in the back of a U-Haul Van and held at gunpoint. Id. Victim-2 was placed in the back of Victim-1's Jeep. Id.

The Maryland Crew then drove the Victims around for approximately 30 minutes, demanding money and marijuana and threatening to shoot the Victims, until the vehicles all stopped in another residential area on 208 Street in Queens (the "208 Street Location"). PSR ¶¶ 12–13. Israel drove the U-Haul Van that had Victim 1 zip tied in the back at gunpoint. Id. ¶12. While at the 208 Street Location, Barnett was parked in Victim-1's Jeep along with Jalon Garrett who held a gun to Victim-2. Barnett left the vehicle and approached the U-Haul Van where Victim-1 was zip-tied and held at gun point. When Barnett opened the door, Barnett had Victim-1's phone as asked Victim-1 how to get into the phone and who they should contact for more potential marijuana. After Victim-1 provided instructions to Barnett in response to Barnett's demands, Barnett left and went back to the other vehicle. Not long thereafter, Victim-1 and Marcus Pittman physically fought in the back of the U-Haul Van. Id. During this time, Israel was in the driver seat of the U-Haul Van, he only left once the physical altercation began. Id. ¶ 14. Marcus Pittman subsequently shot Victim-1 multiple times, killing him. Id.

B. Procedural History

On October 9, 2024, a grand jury sitting in the Eastern District of New York, returned an indictment charging Calvin Israel and others with committing a Hobbs Act Robbery and conspiracy to do the same, in violation of 18 U.S.C. § 1951(a), possessing, brandishing and discharging a firearm in connection with a crime of violence, in violation of 18 U.S.C. § 924(c), causing a death through the use of a firearm, in violation of 18 U.S.C. § 924(j)(1), and kidnapping and kidnapping resulting in a death, in violation of 18 U.S.C. § 1201(a)(1).

On January 13, 2025, Israel pleaded guilty before the Court, to committing a Hobbs Act robbery, in violation of Title 18, United States Code, Section 1951(a), and possessing a firearm, in violation of Title 18, United States Code, Section 924(c)(1)(A)(i). ECF No. 79.

II. Applicable Law

The Supreme Court has explained that "a district court should begin all sentencing proceedings by correctly calculating the applicable the United States Sentencing Guidelines (the "Guidelines") range. Gall v. United States, 552 U.S. 38, 49 (2007). Though advisory, see United States v. Booker, 543 U.S. 220, 264 (2005), the Guidelines nonetheless are "the starting point and the initial benchmark," Gall, 552 U.S. at 49; see also Molina-Martinez v. United

States, 578 U.S. 189, 198–99 (2016) (explaining that "[t]he Guidelines are the framework for sentencing and anchor the district court's discretion" (alternation and internal quotation marks omitted)).

After calculating the applicable Guidelines range, the court must consider the factors outlined in § 3553(a), see Gall, 552 U.S. at 49, and "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing," United States v. Cavera, 550 F.3d 180, 188 (2d Cir. 2008) (citing 18 U.S.C. § 3553(a)(2)). Section 3553(a) directs the court "in determining the particular sentence to impose" to evaluate: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the statutory purposes noted above; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range as set forth in the Sentencing Guidelines; (5) the Sentencing Guidelines policy statements; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to any victims of the offense. "[I]n the ordinary case, the [U.S. Sentencing] Commission's recommendation of a sentencing range will reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." Kimbrough v. United States, 552 U.S. 85, 109 (2007) (internal quotation marks omitted); see also United States v. Rueda-Zarate, 291 F. App'x 364, 366 (2d Cir. 2008) ("A Guidelines sentence will in the ordinary case 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives.'" (quoting Kimbrough, 552 U.S. at 109)); United States v. Fernandez, 443 F.3d 19, 27 (2d Cir. 2006) ("[I]n the overwhelming majority of cases, a Guidelines sentence will fall comfortably within the broad range of sentences that would be reasonable in the particular circumstances."). That is because "the sentencing statutes envision both the sentencing judge and the Commission as carrying out the same basic § 3553(a) objectives, the one, at retail, the other at wholesale." Rita v. United States, 551 U.S. 338, 348 (2007).

At sentencing, "the court is virtually unfettered with respect to the information it may consider." United States v. Alexander, 860 F.2d 508, 513 (2d Cir. 1988). Indeed, "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661.

## III. Discussion

### A. The Guidelines Calculation

As an initial matter, see Gall, 552 U.S. at 49; Molina-Martinez, 578 U.S. at 198–99, the government submits that the Total Offense Level, as reflected in the PSR, is 38, following the three-point reduction for acceptance of responsibility, see PSR ¶ 72. Because Israel falls in Criminal History Category I, see id. ¶ 75, the resulting Guidelines range is 235 to 240 months' imprisonment, with an additional five-year term of imprisonment on Count Three to run consecutive to any other counts, see id. ¶¶ 111-12.

B. The § 3553(a) Factors Demand a Significant Term of Imprisonment

The government respectfully submits that a consideration of the factors set forth in § 3553(a) supports a sentence of 235-240 months' imprisonment, followed by a mandatory consecutive term of 60 months' imprisonment, absent other considerations. However, the government acknowledges that based on the history and characteristics of the defendant and the minor role he played in the offense, a downward variance may be warranted.

The seriousness of the offenses cannot be overstated. See 18 U.S.C. § 3553(a)(1). As the Supreme Court has noted, "robbery is a serious crime deserving serious punishment." Enmund v. Florida, 458 U.S. 782, 797 (1982). This is especially true where, as here, a defendant's conduct not only recklessly endangers the lives of others, see, e.g., United States v. Pena, No. 14-CR-553 (WFK), 2016 WL 3582045, at *3 (E.D.N.Y. June 28, 2016), but in fact contributes to a loss of life.

The defendant was an essential member of the robbery scheme. He agreed to participate in a robbery and then drove the U-Haul Van to where the robbery was supposed to occur, all the way from Maryland. The U-Haul Van was to be used to transport the marijuana after the robbery and where the assailants ultimately held Victim 1 captive. Knowing that his co-conspirators planned to rob the Victims when the Maryland Crew arrived in New York, Israel waited outside in the U-Haul Van as the robbery occurred. He was present as Victim 1 was forced into the back of the U-Haul Van and held a gunpoint, as his co-conspirators threatened him. These actions alone would warrant a significant punishment.

A substantial term of imprisonment also would accomplish the goals of sentencing by underscoring the significant ramifications that come when criminal actors commit violent robberies using firearms, which here escalated to murder. See 18 U.S.C. § 3553(a)(2)(B).

While, a significant sentence may be necessary to generally deter other similarly situated individuals from such conduct, based on the history and characteristics of the defendant the government agrees such a sentence is not necessary to specifically deter, or to protect the public from further crimes of the defendant. See 18 U.S.C. §§ 3553(a)(2)(B), (C). The sentence here should account for Israel's role and the other mitigating factors argued by the defendant in his submission, while also taking into account the nature and circumstances of the offense, and whether there is the need to protect the public and the need for deterrence.

## IV. Conclusion

For the reasons noted above, the government respectfully submits that a downward variance from a sentence within the applicable Guidelines range of 235 to 240 months' imprisonment, followed by a mandatory consecutive term of 60 months' imprisonment may be a warranted and result in a sentence that is sufficient but not more than necessary to reflect the defendant's conduct in this case.

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney

By: /s/ Chand Edwards-Balfour
Chand Edwards-Balfour
Adam Amir
Assistant U.S. Attorneys
(718) 254-7000

cc: Clerk of the Court (KAM) (by ECF)
Defense Counsel, Esq. (by ECF and email)
U.S. Probation (by email)