**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

FJN:CWE/AA
F. #2024R00637

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

July 20, 2026

By ECF and Hand Delivery

The Honorable Kiyo A. Matsumoto
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: United States v. Marcus Pittman
Criminal Docket No. 24-413 (KAM)

The government respectfully submits this letter in advance of the defendant Marcus Pittman's sentencing hearing, which is scheduled for August 6, 2026. The defendant has pleaded guilty, pursuant to a plea agreement, to the offense of Causing Death Through Use of a Firearm, in violation of Title 18, United States Code, Section 924(j)(1).[1] The conviction arises from the defendant's participation in an armed robbery and kidnapping of marijuana dealers in Queens, New York. During the robbery, Pittman shot one of the dealers, Julian Mejias, killing him. Pittman shot and killed Mejias just months after being released from prison for committing another violent crime. For these reasons, and the reasons stated below, the Court should impose a Guidelines sentence of 360 months to life imprisonment.

## I. Background

### A. Offense Conduct

Marcus Pittman was a member of an armed robbery crew (the "Maryland Crew") that targeted marijuana dealers from Maryland and New York City. See Presentence Investigation Report dated May 21, 2026 ("PSR") ¶¶ 6-7. The crew also included co-defendants William Barnett, Delonta Pittman, and Jalon Garrett, among others. See PSR ¶ 6.

[1] Pittman also pleaded guilty to another crime: Possessing, Brandishing and Discharging a Firearm in Connection with a Crime of Violence in violation of 18 U.S.C. § 924(c) (Count Three). See Plea Agreement ¶ 1. Following the U.S. Supreme Court's decision in Barrett v. United States, No. 24-5774 (Jan. 14, 2026), which forbade prosecutions for both 924(c) and 924(j) in certain circumstances, the government moved to dismiss Count Three, which this Court granted. See PSR ¶ 1.

On or about July 25, 2024, Pittman, along with the Maryland Crew, traveled from Maryland to New York and robbed and kidnapped Julian Mejias and Victim-2 (collectively, "the Victims"). Id. The kidnapping culminated in the shooting and killing Mejias on July 25, 2024 (the "July 25, 2024 Murder"). Id.

On or about July 25, 2024, the Victims met with members of the Maryland Crew William Barnett and Jerome Waters at a stash house in a residential area of 197th Street in Queens, New York. PSR ¶ 10. The Victims intended to sell Barnett and Waters a large quantity of marijuana. PSR ¶ 9. Shortly into the meeting, Barnett and Waters pulled out firearms and aimed them at the Victims. PSR ¶ 10. Next, Barnett and Waters signaled the other members of the Maryland Crew, including Marcus Pittman, who had been waiting outside, to assist. Id. Pittman and others zip-tied the hands of the victims. Id. After forcibly taking approximately 30 pounds of marijuana from the Victims, Pittman, with others, forced the Victims outside and into separate vehicles. Id. Mejias was placed in the back of a U-Haul van and held at gunpoint by Pittman. Id. Victim-2 was placed in the back of Mejias's Jeep. Id.

The Maryland Crew then drove the Victims around for approximately 30 minutes, demanding money and marijuana and threatening to shoot the Victims. PSR ¶ 11. While another member of the Maryland Crew, Calvin Israel, drove the U-Haul van, Pittman continued to hold Mejias at gunpoint. PSR ¶ 11. The vehicles then stopped in a residential area on 208 Street in Queens (the "208 Street Location"). PSR ¶¶ 11-12. While at the 208 Street Location, Mejias and Pittman physically fought in the back of the U-Haul van. PSR ¶ 13. Pittman subsequently shot Mejias multiple times, killing him. Id. Pittman, with the Maryland Crew, fled the scene.

B. Criminal History

The defendant falls within Criminal History Category III. See PSR ¶ 72. Pittman has two significant prior convictions, the first for robbery conspiracy and the second for felony firearm possession, as described below. PSR ¶¶ 70-76.

On November 16, 2016, Pittman was convicted of firearm possession with a felony conviction in Maryland and sentenced to five years' imprisonment. PSR ¶ 70. The offense arose out of an incident during which two victims were bound, assaulted, spray painted, driven to a second location, and made to "walk to a nearby area and down an embankment." Id. While walking down the embankment, the victims were fired at multiple times. Id. One of the victims was shot, and the victim sustained serious injuries. Id. The victims knew Pittman and identified him as one of two suspects involved in the crime. Id. Fingerprints on an empty .45-caliber magazine recovered at the crime scene yielded a positive identification of Pittman, id., suggesting that Pittman had handled the magazine.

On March 4, 2015, Pittman was convicted of robbery conspiracy in Maryland and sentenced to five years' imprisonment and three years' probation (with an approximately four-year suspended sentence). PSR ¶ 69. On October 13, 2015, a bench warrant was issued for Pittman's violation of his probation, and on January 25, 2017, Pittman was re-sentenced to approximately four years' imprisonment. Id.

Pittman also committed crimes as a minor, including the sale of drugs. PSR ¶¶ 68, 75-76.

C. Misconduct While Incarcerated

Since his detention at the Metropolitan Detention Center ("MDC") in Brooklyn, the defendant has committed five disciplinary violations, including engaging in disruptive conduct and refusing to obey an order, for which he was sentenced to a loss of good conduct time and loss of visitation privileges, among other sanctions. PSR ¶ 86. While at the MDC, the defendant has not held any work assignments. Id. Nor has he completed any educational programming. Id.

D. Procedural History

On December 4, 2024, a grand jury sitting in the Eastern District of New York returned a sealed superseding indictment charging Marcus Pittman with committing a Hobbs Act Robbery and conspiracy to do the same, in violation of 18 U.S.C. § 1951(a), Possessing, Brandishing and Discharging a Firearm in Connection with a Crime of Violence, in violation of 18 U.S.C. § 924(c), Causing Death Through Use of a Firearm, in violation of 18 U.S.C. § 924(j)(1), and Kidnapping and Kidnapping Resulting in a Death, in violation of 18 U.S.C. § 1201(a)(1). ECF No. 53. Pittman was arrested on February 18, 2025, in the District of Maryland. PSR ¶ 25. He made his initial appearance in this district on March 17, 2025. ECF No. 100.

On December 4, 2025, Pittman pleaded guilty, pursuant to a plea agreement, before the Court to Counts Three and Four of the superseding indictment, namely: Possessing, Brandishing and Discharging a Firearm in Connection with a Crime of Violence (§ 924(c)), and Causing Death Through Use of a Firearm (§ 924(j)(1)). See Plea Agreement ¶ 1. Count Three was later dismissed at the government's request. See PSR ¶ 1.

II. Applicable Law

The Supreme Court has explained that "a district court should begin all sentencing proceedings by correctly calculating the applicable the United States Sentencing Guidelines (the "Guidelines") range. Gall v. United States, 552 U.S. 38, 49 (2007). Though advisory, see United States v. Booker, 543 U.S. 220, 264 (2005), the Guidelines nonetheless are "the starting point and the initial benchmark," Gall, 552 U.S. at 49; see also Molina-Martinez v. United States, 578 U.S. 189, 198-99 (2016) (explaining that "[t]he Guidelines are the framework for sentencing and anchor the district court's discretion" (alternation and internal quotation marks omitted)).

After calculating the applicable Guidelines range, the court must consider the factors outlined in Section 3553(a), see Gall, 552 U.S. at 49, and "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing," United States v. Cavera, 550 F.3d 180, 188 (2d Cir. 2008) (citing 18 U.S.C. § 3553(a)(2)). Section 3553(a) directs the court "in determining the particular sentence to impose" to evaluate: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the

statutory purposes noted above; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range as set forth in the Sentencing Guidelines; (5) the Sentencing Guidelines policy statements; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to any victims of the offense. "[I]n the ordinary case, the [U.S. Sentencing] Commission's recommendation of a sentencing range will reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." Kimbrough v. United States, 552 U.S. 85, 109 (2007) (internal quotation marks omitted); see also United States v. Rueda-Zarate, 291 F. App'x 364, 366 (2d Cir. 2008) ("A Guidelines sentence will in the ordinary case 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives.'" (quoting Kimbrough, 552 U.S. at 109)); United States v. Fernandez, 443 F.3d 19, 27 (2d Cir. 2006) ("[I]n the overwhelming majority of cases, a Guidelines sentence will fall comfortably within the broad range of sentences that would be reasonable in the particular circumstances."). That is because "the sentencing statutes envision both the sentencing judge and the Commission as carrying out the same basic § 3553(a) objectives, the one, at retail, the other at wholesale." Rita v. United States, 551 U.S. 338, 348 (2007).

At sentencing, "the court is virtually unfettered with respect to the information it may consider." United States v. Alexander, 860 F.2d 508, 513 (2d Cir. 1988). Indeed, "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661.

## III. Discussion

### A. The Guidelines Calculation

The Guidelines are calculated as follows. A violation of 18 U.S.C. § 924(j)(1) carries a Base Offense Level of 43. See U.S.S.G §§ 2A1.1, 2A1.2. The defendant has timely demonstrated acceptance of responsibility for the offense, decreasing the offense level by three points. See U.S.S.G §§ 3E1.1(a), 3E1.1(b); PSR ¶¶ 64-65. Accordingly, the Total Offense Level for Count Four is 40. See PSR ¶ 67. Because Pittman falls in Criminal History Category III, PSR ¶ 72, the resulting Guidelines range is 360 months to life imprisonment. Pittman stipulated to this Guidelines calculation and range in his plea agreement. See Plea Agreement ¶ 2.

### B. A Guidelines Sentence of 360 Months to Life Imprisonment Is Warranted

The government respectfully submits that a consideration of the factors set forth in Section 3553(a) supports a sentence of 360 months to life imprisonment.

#### 1. Nature and Circumstances of the Offense

The seriousness of the offense to which the defendant pled guilty cannot be overstated and requires a substantial carceral sentence. See 18 U.S.C. § 3553(a)(1). Pittman shot and killed Mejias while participating in an armed robbery. Alone, as the Supreme Court has noted, "robbery is a serious crime deserving serious punishment." Enmund v. Florida, 458 U.S. 782, 797 (1982). The instant offense goes far beyond robbery. After being signaled by other

members of the scheme, Pittman entered the stash house, and with the robbery crew, stuffed the Victims' marijuana inside bags, forcibly moved the Victims outside, and forced Mejias into the back of a U-Haul van at gunpoint. PSR ¶ 10. Once in the U-Haul van and travelling, Pittman took responsibility for holding Mejias at gunpoint. PSR ¶ 11. When Mejias broke free of his zip-ties, Pittman shot him multiple times. Id. Pittman apparently made no apparent effort to aid Mejias following the shooting or to place even an anonymous call for help. Instead, he fled the scene, returning to Maryland. The defendant's callous disregard for human life and his brazen criminal conduct demonstrate that a Guidelines sentence of 360 months to life imprisonment is necessary.

2. History and Characteristics of the Defendant

A Guidelines sentence is also appropriate based on the defendant's history and characteristics. See 18 U.S.C. § 3553(a)(1). The defendant has a history of violence. In 2016, he was convicted of felony firearm possession in a Maryland district court. See PSR ¶ 70. In 2015, he was convicted of robbery conspiracy in a Maryland circuit court. See PSR ¶ 69. Indeed, the present offense appears substantially similar to Pittman's prior case for which he was convicted of firearm possession. See PSR ¶ 70. In that case, like this one, Pittman and others forcibly kidnapped and shot at his victims. It is disturbing that Pittman agreed to rob Mejias (and ultimately killed him) just months after Pittman's release from prison. As the Probation Department notes, Pittman's prior convictions follow the same violent pattern as the instant offense, which suggests that prior terms of incarceration did not discourage subsequent, and similar, acts of violence. See Probation Sentencing Recommendation at p. 2.

The defendant's conduct while incarcerated is also concerning. He has committed several infractions and failed to take advantage of the educational or vocational programming at the jail. PSR ¶ 86. That suggests that Pittman is not on a trajectory of rehabilitation and will struggle to readjust to a law-abiding life upon release.

The government acknowledges that the defendant had a difficult upbringing and suffers from mental illness, including schizophrenia, which can be mitigating factor at sentencing. See PSR ¶¶ 93-94. Though medication appears to provide some relief, the defendant has failed to adhere consistently to a treatment regimen, despite intervention at other points in his life. See PSR ¶¶ 95-97; Def. Mem. at 6. This failure has apparently only been successfully addressed when the defendant's treatment regimen is enforced in a carceral setting. See PSR ¶ 93. Without medication, the defendant is at risk of experiencing continued mental illness. If this Court were to impose a below-Guidelines sentence, there is no assurance that the defendant would continue his medication upon release and could therefore pose a significant risk to the public.

In sum, the defendant's pattern of violent behavior, failure to rehabilitate while incarcerated, and failure to appropriately treat his mental health condition pose a serious threat to the community and merit a substantial sentence.

3. Unwarranted Sentencing Disparities

The defendant wrongly argues that a 22-year sentence—about eight years below the bottom end of the Guidelines range—would create unwarranted sentencing disparities with co-defendant Jerome Waters. Def. Mem. 16. But Waters is not an appropriate benchmark. Waters was convicted of Hobbs Act robbery and discharging a firearm, and he was sentenced to 20 years' imprisonment. While Waters' crimes are incredibly serious, his culpability in planning an armed robbery cannot offset the fact that the defendant himself took a human life. A Guidelines sentence justifiably punishes Pittman more for his significantly more serious conduct—murder.

4. The Need for the Sentence to Reflect the Seriousness of the Offense and Provide Just Punishment for the Offense

Particularly acute here is the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense. See 18 U.S.C. § 3553(a)(2)(A). Pittman's actions left a wife without a husband and children without a father. Unlike his co-conspirators, however, Pittman himself pulled the trigger. Pittman's conduct and crime of conviction demonstrate his disregard for the law, willingness to engage in reckless violent behavior, and callous disregard for human life. He made a deliberate choice to participate in the violent armed kidnapping and robbery of Mejias for marijuana and profit. He held Mejias at gunpoint. And, after Mejias attempted to free himself, Pittman killed him. Under these circumstances, a Guidelines sentence is sufficient, but not greater than necessary, to achieve the goals of sentencing.

5. The Need for the Sentence Imposed to Afford Adequate Deterrence to Criminal Conduct and to Protect the Public

A Guidelines sentence is also necessary given the defendant's pattern of committing crimes soon after his release from jail. These prior terms of incarceration have not successfully deterred Pittman from reengaging in crimes of violence. A Guidelines term of imprisonment is therefore appropriate to specifically deter Pittman and protect the community from his further crimes. See 18 U.S.C. §§ 3553(a)(2)(C), (a)(2)(B).

A Guidelines sentence would also accomplish the goals of general deterrence by underscoring that persons who commit violent robberies using firearms and kill others will be punished harshly. See 18 U.S.C. § 3553(a)(2)(B). Such a sentence will serve to deter others who, like Pittman, contemplate using guns and violence for personal gain. This Court's sentence should send a message that using mortal violence will be met with significant consequences.

## IV. Conclusion

For the reasons set forth above, the government respectfully requests a sentence of 360 months to life imprisonment.

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney

By: /s/ Adam Amir
Adam Amir
Chand W. Edwards-Balfour
Assistant U.S. Attorneys
(718) 254-7000

cc: Clerk of the Court (KAM) (by ECF and hand delivery)
Deborah Colson (by ECF and email)
U.S. Probation Office (by email)